UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHERRIE ABATE,

                          Plaintiff,

v.                                                    1:18-CV-0266
                                                             (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICES OF KENNETH HILLER, PLLC      KENNETH HILLER, ESQ.
  Counsel for Plaintiff                              TIMOTHY HILLER, ESQ.
6000 North Bailey Ave, Ste. 1A
Amherst, NY 14226

U.S. SOCIAL SECURITY ADMIN.                ELLIE DOROTHY, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II   FRANCIS TANKARD, ESQ.
  Counsel for Defendant                             SIXTINA FERNANDEZ, ESQ.
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

       The parties consented, in accordance with a Standing Order, to proceed before the undersigned. (Dkt. No. 20.) The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

**I.**      **RELEVANT BACKGROUND**

### A. Factual Background

Plaintiff was born in 1968. (T. 173.) She received a GED. (T. 269.) Generally, Plaintiff's alleged disability consists of tenosynovitis in left ankle, effusion of ankle joint, and "right knee pain." (T. 268.) Her amended alleged disability onset date is May 2, 2014. (T. 54, 112.) Her date last insured is June 30, 2020. (T. 56.) Her past relevant work consists of activities assistant, daily living specialist, habilitation specialist, and instructor. (T. 269.)

### B. Procedural History

On May 19, 2014, Plaintiff applied for Disability Insurance Benefits ("SSD") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 173.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On October 26, 2016, Plaintiff appeared before the ALJ, Timothy M. McGuan. (T. 109-137.) On March 6, 2017, ALJ McGuan issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 51-71.) On December 22, 2017, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 56-66.) First, the ALJ found Plaintiff met the insured status requirements through June 30, 2020 and Plaintiff had not engaged in substantial gainful activity since May 2, 2014. (T. 56.) Second, the ALJ found Plaintiff had the severe impairments of: status post left knee surgery; degenerative left ankle with severe

proliferative synovial hypertrophy and hyperplasia; degenerative right acromioclavicular joint symptomatic as of November 2015; arthritis of the cervical spine; obesity; and flap tear of the medial meniscus and chondromalacia of the right knee beginning in late 2014 with surgical repair in November 2015.  (T. 57.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (*Id*.)  Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the option to sit or stand every 45 minutes.  (T. 57.)[1]  The ALJ further found Plaintiff could occasionally climb stairs and ladders but could perform no overhead reaching and must avoid kneeling and squatting.  (T. 57-58.)  Fifth, the ALJ determined Plaintiff was unable to perform past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 63-66.)

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ relied on a stale medical opinion in formulating his RFC determination.  (Dkt. No. 9 at 12-14.)  Second, Plaintiff argues the ALJ failed to provide "good reasons" for rejecting the opinion of a treating medical source.  (*Id*. at 14-17.)  Third, and lastly, Plaintiff argues remand is required because

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

new and material evidence was submitted to the AC.  (*Id*. at 17-20.)  Plaintiff also filed a reply in which she reiterated her original arguments.  (Dkt. No. 13.)

    **B.**    **Defendant's Arguments**

In response, Defendant makes three arguments.  First, Defendant argues the ALJ properly determined the RFC and considered the record as a whole.  (Dkt. No. 12 at 16-19.)  Second, Defendant argues the ALJ properly considered a medical opinion that Plaintiff was limited to part-time work.  (*Id*. at 19-24.)  Third, and lastly, Defendant argues Plaintiff has not shown that the additional evidence submitted to the AC warrants remand.  (*Id*. at 24-29.)

**III.**    **RELEVANT LEGAL STANDARD**

    **A.**    **Standard of Review**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.   ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations."  20 C.F.R. §§ 404.1545(a)(1), 461.945(a)(1)[2].  The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources.  *Id*. §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).  Although the ALJ has the responsibility to determine the RFC based on all the evidence in the record, the burden is on Plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  *Id*. §§ 404.1512(c), 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.912(c), 416.927(e)(2), 416.945(a), 416.946(c).

### A.   Stale Medical Opinion

---

[2]   Effective March 27, 2017, many of the regulations cited herein have been amended, as have Social Security Rulings ("SSRs").  Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the court reviews the ALJ's decision under the earlier regulations and SSRs.

Plaintiff argues the opinion of consultative examiner, John Schwab, D.O., predated Plaintiff's knee surgeries and the development of Plaintiff's cervical impairment. (Dkt. No. 9 at 12-14.) Plaintiff argues because "the only medical opinion that supported a finding of not disabled predated two knee surgeries and the development of herniated discs and spinal stenosis in the cervical spine, there was not sufficient medical basis for the ALJ's RFC assessment." (*Id*. at 14.)

Plaintiff's argument, the ALJ's RFC determination was the product of legal error because it was not based on an updated medical opinion, is without merit. (Dkt. No. 9 at 13.) The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted); see *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). As outlined further herein, the ALJ properly determined Plaintiff's RFC based on the record as a whole included evidence submitted after Plaintiff's surgeries.

Although Dr. Schwab provided an opinion prior to Plaintiff's subsequent surgeries, his opinion is not rendered obsolete based solely on timing. To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015), *aff'd*, 652 F. App'x 25 (2d Cir. 2016).

Further, a medical opinion may be stale if it does not account for the plaintiff's deteriorating condition. *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.,* 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). Remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to fully analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, No. 19-1674-CV, -- F. App'x ---, 2020 WL 2517062, at *1 (2d Cir. May 18, 2020).

Dr. Schwab examined Plaintiff on September 11, 2014. (T. 516.) On examination, Dr. Schwab observed Plaintiff was in not acute distress; walked with a normal gait; could not walk on heels and toes; stopped squatting 1/8 of the way down due to knee pain; had a normal stance; used no assistive devices; needed no help changing for the exam or getting on and off the exam table; and was able to rise from a chair without difficulty. (T. 517.) Plaintiff had full range of motion in her cervical and lumbar spine, shoulders, elbows, forearms, wrists, hips, and knees. (T. 518.) Plaintiff had reduced range of motion in her left ankle and full range of motion in her right ankle. (*Id*.) Dr. Schwab reviewed an X-ray of Plaintiff's right knee which noted "no significant bony abnormality." (T. 520.) Dr. Schwab opined Plaintiff had "moderate" limitations in walking and climbing stairs and ladders. (T. 518.) He further opined Plaintiff should avoid activities that triggered her asthma. (*Id*.)

In January 2015 Plaintiff presented to Excelsior Orthopaedics for evaluation of right knee pain that began "several months ago" and became worse in the last two

weeks after shoveling snow. (T. 535.) On examination Plaintiff's right knee showed "mild effusion," no obvious instability, normal muscle tone, and full range of motion. (T. 536.) Plaintiff's right calf was enlarged compared to left and she was tender to palpation over the gastric muscle. (T. 536.) The examining physician's assistant suspected Plaintiff's pain was "muscular in nature" but ordered testing to rule out deep vein thrombosis ("DVT"). (T. 537.) An x-ray of the right knee showed "mild joint space narrowing of the medial compartment." (T. 538.)

On July 16, 2015, Michael Freitae, M.D., examined Plaintiff for her progressive knee pain. (T. 604.) Dr. Freitae noted her examination was "most consistent with a medial meniscus tear," referred Plaintiff to physical therapy, and ordered an MRI. (*Id*.) In August 2015, William Wind, M.D. examined Plaintiff and observed she walked with a normal gait and her right knee had full range of motion. (T. 605.) Dr. Wind reviewed Plaintiff's MRI and diagnosed her with right knee medial meniscus tear. (T. 606.) Plaintiff elected to undergo a right knee arthroscopy with partial medial meniscectomy. (*Id*.) Surgery was scheduled for November 24, 2015. (T. 521.) However, Plaintiff did not undergo surgery.

On August 3, 2016, Plaintiff visited the emergency room for left knee pain. (T. 624-630.) She had full range of motion, a stable joint, and no effusion. (T. 624.) The provider noted a chronically swollen left ankle. (T. 624.) An x-ray of the knee showed mild degenerative change of the medical compartment of the left knee joint. (T. 625.) The provider wrote a work restriction stating Plaintiff was excused from work until August 8, 2016, or until medically cleared by a private physician. (T. 580.)

On August 10, 2016, Plaintiff saw John Karpie, M.D., of Buffalo Orthopaedic Group for bilateral knee pain.  (T. 631-632.)  Plaintiff stated her left knee was worse than the right knee.  (T. 631.)  Dr. Karpie noted Plaintiff had declined right-knee surgery and the pain was tolerable at present.  (T. 631.)  Plaintiff walked with a limp.  (*Id*.)  Dr. Karpie assessed moderate right knee osteoarthritis and left knee chondromalacia with possible intra-articular injury.  (T. 631.)  Dr. Karpie ordered an MRI of the left knee and wrote a work restriction stating that Plaintiff was disabled from work due to bilateral knee pain from August 10, 2016 to August 24, 2016.  (T. 581, 631-632.)

On August 17, 2016, Plaintiff underwent an MRI of the left knee.  (T. 633.)  The MRI showed radial fraying and tearing of the lateral meniscus; a flap tear of the meniscal tissue; grade 4 chondromalacia of the medial patellar facet and grade 2 chondromalacia at other locations; and a large joint effusion.  (T. 633.)

On August 24, 2016, Plaintiff returned to Dr. Karpie.  (T. 634-635.)  He noted Plaintiff had an intra-articular cortisone injection, which provided some relief.  (T. 634.)  Dr. Karpie wrote another work restriction stating Plaintiff was disabled from work due to left knee complex meniscus tear from August 24, 2016 to September 26, 2016, and was scheduled for a left knee arthroscopy on September 1, 2016.  (T. 585, 635.)

On October 27, 2016, Dr. Karpie wrote a work restriction stating Plaintiff was under his care for her right shoulder and cervical spine.  (T. 659.)  He indicated Plaintiff was released to work on October 28, 2016 with the restriction of no lifting.  (T. 659.)

Plaintiff underwent an MRI of the cervical spine on November 14, 2016.  (T. 661-662.)  The findings were mild straightening of the cervical lordosis likely due to muscle spasm; left facet arthropathy at C3-4; and hypertrophy of the joint at C4-5.  (T. 661-

662.) On November 21, 2016, Dr. Karpie wrote a work restriction stating Plaintiff was under his care for her right shoulder, left knee, and cervical spine. (T. 663.) Dr. Karpie indicated Plaintiff was disabled from work from October 27, 2016 to December 20, 2016. (T. 663.) He added that Plaintiff had an appointment scheduled with a doctor to assess her cervical spine on December 20, 2016. (T. 663.)

In assessing Plaintiff's RFC, the ALJ afforded "great weight" to Dr. Schwab's opinion. (T. 62.) The ALJ concluded Dr. Schwab was "familiar with Social Security's rules and regulations regarding physical impairments and disability and the objective findings of this thorough physical examination support his conclusions." (*Id*.) The ALJ further concluded the doctor's opinion was consistent with the record from treating sources, which documented normal gait or only slightly limping gait, and Plaintiff's reported activities of daily living. (T. 62-63.)

Plaintiff essentially argues Dr. Schwab's opinion was rendered stale solely by subsequent surgeries and diagnosis of a cervical spine impairment. (Dkt. No. 9 at 14.) Plaintiff does not provide any evidence in the record that these subsequent events caused greater functional limitations than provided for by the ALJ in her RFC determination. (*Id*.) Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ and here Plaintiff fails to do so. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).

First, Plaintiff states Dr. Schwab's opinion is impermissibly stale because it predated a knee surgery to repair a torn right meniscus. (Dkt. No. 9 at 12.) Although surgery was scheduled (T. 521), Plaintiff did not follow through with surgery because her right knee pain was "tolerable." (T. 631.) Further, Dr. Schwab was aware of

11

Plaintiff's right knee pain, reviewed imagining of Plaintiff's right knee, and considered right knee impairment in his opinion of limitations. (T. 516-520.)

In early September 2016, approximately one month before her hearing, Plaintiff underwent left knee surgery. (T. 650.) During a post-surgery follow up on September 14, 2016, Dr. Karpie noted Plaintiff was doing well, she reported some cramping in her leg, she had a slight limp, and she denied numbness or tingling in her left lower extremity. (T. 650.) At her hearing, Plaintiff testified her left knee was "50% better" after surgery. (T. 115.) Plaintiff testified that prior to surgery she was working part time and was having "a very hard time" with her knees, because work required "too much walking" and stairs "were involved a lot." (T. 117.) She stated she could not kneel or squat. (T. 123-124.)

An MRI of Plaintiff's cervical spine dated November 2016 indicated "mild straightening of cervical lordosis likely due to muscle spasm, C3-4 left facet arthrosis, and C4-5 hypertrophy of the right uncovertebral joint with right foraminal." (T. 661-662.) Dr. Karpie noted Plaintiff was "disabled" from work between October 27, 2016 to December 20, 2016 due to her "cervical spine and right shoulder and left knee." (T. 663.) The doctor referred Plaintiff to Gregory Castiglia, M.D. for her cervical spine and an appointment was set for December 20, 2016. (*Id*.) A review of the record, including evidence submitted to the AC does not contain treatment records from Dr. Castiglia.

Although the record included surgery for Plaintiff's left knee and the additional cervical impairment, such events did not render Dr. Schwab's opinion impermissibly stale. Overall, Plaintiff fails to show any additional limitations caused by these

subsequent medical events.  Further, the ALJ considered Plaintiff's knee impairments and cervical spine MRI in formulating her RFC determination.

In formulating Plaintiff's RFC determination, the ALJ properly relied on the record as a whole, including Plaintiff's knee surgery and cervical spine impairment.  *See Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018) (the ALJ is obligated to formulate a claimant's RFC based on the record as a whole, not just upon the medical opinions alone).  After her discussion of Dr Schwab's examination and opinion, the ALJ noted "subsequently dated records" which included "new impairments." (T. 60.)  The ALJ discussed treatment for Plaintiff's knee impairment including objective observations, medical imaging, and surgery.  (T. 60-61.)  The ALJ considered statements Plaintiff was "disabled" for set periods of time after her knee surgery.  (T. 61.)  The ALJ also considered Plaintiff's cervical spine impairment and noted the record contained no evidence of follow-up after her November 2016 MRI.  (*Id*.)  The ALJ thoroughly discussed objective observations in the record concerning Plaintiff's physical impairments.  (*Id*.)  The ALJ also discussed Plaintiff's obesity and the impact it had on weight bearing joints.  (T. 62.)  Lastly, the ALJ considered Plaintiff's reported activities of daily living.  (*Id*.)

The ALJ's RFC was consistent with the evidence outline herein including Dr. Schwab's opinion, subsequent medical evidence provided after his opinion, and Plaintiff's testimony.  Ultimately, the ALJ found a more restrictive RFC than Dr. Schwab's opined limitations.  *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) (citing *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *4 (W.D.N.Y. Mar. 6, 2018) ("[R]emand is generally not warranted where

the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record."). In addition to Dr. Schwab's "moderate" limitations in walking and climbing, the ALJ determined Plaintiff could not kneel, squat, or perform overhead reaching. (T. 57-58.) The ALJ further determined Plaintiff required the ability to change positions from sitting or standing every 45 minutes. (T. 57.)

In sum, the ALJ relied on the record as a whole in formulating Plaintiff's RFC, including evidence provided after Dr. Schwab rendered his opinion. The ALJ's RFC accounted for any additional limitations supported by the record and was ultimately more restrictive than Dr. Schwab's opined limitations. Plaintiff failed to provide evidence in the record establishing more restrictive limitations based on her knee surgery or cervical impairment. Therefore, subsequent surgery and spinal impairment did not render Dr. Schwab's opinion impermissibly stale.

### B. Treating Source Opinion

Plaintiff argues the ALJ failed to provide "good reasons" in rejecting the opinion of Christopher Ritter, M.D. regarding Plaintiff's ability to only work three days a week. (Dkt. No. 9 at 14-17.) Plaintiff argues Dr. Ritter's opinion concerned the "nature and severity of [Plaintiff's] impairments(s)" under 20 C.F.R. § 404.1527(d)(2) and therefore the ALJ was required to assess the opinion under the treating physician rule and provide good reasons for rejecting the opinion. (*Id.*)

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When assigning less than "controlling weight" to a

treating physician's opinion, the ALJ must "explicitly consider" the four factors announced in *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008).  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal quotation marks omitted).  Those factors, referred to as "the *Burgess* factors," are "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella,* 925 F.3d at 95-96 (citation omitted); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  A reviewing court should remand for failure to consider explicitly the *Burgess* factors unless a searching review of the record shows that the ALJ has provided "good reasons" for its weight assessment.  *Id*. at 96; *see Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("While the ALJ here did not always explicitly consider the *Burgess* factors when assigning the treating physician' opinions less than controlling weight, we nonetheless conclude that the ALJ provided sufficient "good reasons" for the weight assigned.").

On May 6, 2014, Dr. Ritter filled out a work note concerning Plaintiff's ability to perform work and other activities.  (T. 403.)  Dr. Ritter noted he treated Plaintiff for her left ankle impairment and checked the box indicating Plaintiff was "released to return to work with no restrictions on 05/02/2014."  (*Id*.)  He also wrote on the form Plaintiff "can only work Mondays, Wednesdays, and Friday[s] until retirement."  (*Id*.)  Plaintiff's work was performed at the medium exertional level.  (T. 129-130.)  The ALJ concluded Dr. Ritter's restriction to working only three days a week was "somewhat puzzling" and appeared to be based on Plaintiff's subjective requests.  (T. 63.)

Essentially, Dr. Ritter's opinion goes to Plaintiff's ability to perform work on a "regular and continuing basis." *See* 20 C.F.R. §§ 404.1545(b), (c) (an ALJ assesses a plaintiff's physical and mental limitations and restrictions and determines plaintiff's RFC for work activity on a regular and continuing basis); *see* SSR 96-8p (a regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule).

As outlined by the ALJ, medical opinion evidence supported the determination that although Plaintiff's impairments imposed work related functional limitations, she was still capable of performing a limited range of work on a sustained basis. The ALJ relied on the medical opinion evidence in the record, numerous treatment notations, objective medical imaging and Plaintiff's testimony. Although Dr. Ritter opined Plaintiff was unable to perform work on a regular and continuing basis, the ALJ's RFC determination was proper and supported by substantial evidence.

C. **Evidence Submitted to the AC**

Plaintiff contends the AC erred as a matter of law in rejecting the new evidence about a later time without providing a sufficient explanation. (Dkt. No. 13 at 12-21.) The Second Circuit has expressly declined to rule on the issue of whether or not the AC is required to provide express rationale in its decisions.

The plaintiff in *Lesterhuis v. Colvin*, 805 F.3d 83 (2d Cir. 2015), argued the AC erred by failing to provide an explanation for why it disregarded treating source opinions that were first submitted to the AC. 805 F.3d at 89. The Court stated:

> because we hold that the ALJ's decision was not supported by substantial evidence, we need not consider Lesterhuis's alternative argument that the Appeals Council has an independent obligation to provide "good reasons"

16

>before declining to give weight to the new, material opinion of a treating physician submitted only to the Appeals Council and not to the ALJ.

*Id*.

Regardless of whether the evidence was a medical source statement provided by a treating source or other acceptable medical source, or if the evidence contained other medical information such as treatment notations, the Second Circuit has declined to state whether or not the AC is obligated to provide express rationale in making its determinations. However, the Second Circuit has held that the ALJ's decision, not the AC decision, is the final decision of the Commissioner and a district court's review is based on the entire record, including any new evidence.

In *Lesterhuis*, the Court determined, "once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Lesterhuis*, 805 F.3d at 87, *citing* 20 C.F.R. § 404.970(b). When the AC denies review in a case, the review focuses on the ALJ's decision. *Id.* at 87; *see* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner ..., may obtain a review of such decision by a civil action....").

A district court's review is based on the entire administrative record, including any new evidence submitted to the AC following the ALJ's decision. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). Thus, as in this case, when the AC denies review after considering new evidence, the court "simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every

17

case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez,* 77 F.3d at 46.

The Second Circuit has cautioned that medical evidence generated after an ALJ's decision cannot be "deemed irrelevant solely because of timing, [as] subsequent evidence of the severity of a condition suggests that the condition may have been more severe in the past than previously thought." *Suttles v. Colvin*, 654 F. App'x 44, 47 (2d Cir. 2016) (internal citations omitted). However, the Court has consistently held that medical evidence generated after the ALJ's decision must be both (1) relevant to the plaintiff's condition during the relevant period and (2) probative, and additionally must create "a reasonable possibility that the new evidence would have influenced the Commissioner to decide [plaintiff's] application differently." *Evans v. Colvin*, 649 F. App'x 35, 38 (2d Cir. 2016) (citing *Pollard v. Halter,* 377 F.3d 183, 193 (2d Cir. 2004)); *see Guerra v. Colvin*, 618 F. App'x 23, 25 (2d Cir. 2015) (new medical records submitted to the AC document symptoms after the ALJ's decision date, do not undermine the ALJ's evaluation of plaintiff's condition during the relevant time period, and plaintiff failed to explain why certain evidence made 19 months after the ALJ's decision related to her disability status as of the date of the ALJ's decision); *see Perez,* 77 F.3d at 47 (although medical evidence dated after the ALJ's decision may support plaintiff's contention that she was unable to perform sedentary work, it did not indicate that she was incapable of performing sedentary work during the relevant time period); *see* 20 C.F.R. § 416.1470(a)(5), (b) (permitting review of an ALJ's decision based on new evidence submitted to the AC only if, *inter alia*, the evidence "relates to the period on or before the date of the [ALJ's] hearing decision").

Here, the new medical records do not undermine the ALJ's evaluation of Plaintiff's condition during the relevant time period because the evidence was cumulative. Medical evidence relevant to the period at issue did not show a reasonable probability that it would have changed the outcome of the decision. *See* 20 C.F.R. §§ 404.970, 416.1470; *Rutkowski v. Astrue*, 368 Fed. App'x. 226, 229 (2d Cir. 2010) (evidence submitted to the Appeals Council did not "add so much as to make the ALJ's decision contrary to the weight of the evidence.").

Instead, the additional records submitted to the AC were cumulative evidence and showed already considered complaints of right knee pain, shoulder and cervical pain, and a left ankle injury. (T. 60-61, 141-45, 148-150.) In particular, the additional evidence consisted of treatment records regarding Plaintiff's complaints of right knee pain in July 2015 and August 2015. (*Id.*) Moreover, the ALJ considered an MRI which showed an undersurface flap tear of the medical meniscus and grade 3 and 4 patellar facet chondromalacia and that Plaintiff was referred to Dr. Wind. (T. 57, 61, 149.) In addition, these records showed Plaintiff could perform light activities, like walking, housework, or yard work without knee pain; she walked with a normal gait and had full range of motion and strength. (T. 142, 147, 149.)

Similarly, Plaintiff submitted an October 20, 2016 treatment note from Dr. Karpie showing that she reported no left knee pain at her six-week follow-up after a left knee arthroscopy. (T. 76-77.) This record mirrored Plaintiff's two-week post-surgical follow-up, which was considered by the ALJ, and showed that Plaintiff was doing well after her surgery. (T. 76.)

Plaintiff also did not show good cause for her failure to present the evidence earlier. (Dkt. No. 9 at 17-20). Social Security Regulations provide that the Appeals Council will only consider additional evidence under paragraph (a)(5) if the plaintiff shows good cause for not informing the agency about or submitting the evidence. *See* 20 C.F.R. §§ 404.970(b); 416.1470(b). At the administrative hearing, the ALJ asked Plaintiff's attorney if she had adequate time to review and prepare for the hearing with her client, to which she said, "yes." (T. 111.) The attorney stated that the medical evidence was complete. (T. 111.) After the hearing, the attorney submitted additional medical evidence, which was entered into the record and considered by the ALJ. (T. 54, 658-663.)

Therefore, the evidence submitted to the AC was cumulative. A review of the record as a whole, including evidence submitted to the AC, indicates the ALJ's decision was proper and supported by substantial evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:      August 10, 2020

William B. Mitchell Carter
U.S. Magistrate Judge